13 of 134 credits. So this is further evidence that plaintiff is even admitting that he doesn't have the credits for the degree. And that also happened on August 19th. And that is an independent reason that Montez decided to change his mind, that he decided to agree with Young, that plaintiff was incredible. The cat's paw theory that plaintiff is advancing does not explain HR. HR never had a conversation with Tran, and plaintiff doesn't allege that they did. HR independently reached out to the university, and based on that conversation, based on the background check, and based on that, they declined Mr. Ahmed to be credible. And in those situations, the museum doesn't move forward with candidates. There's just simply no way that plaintiff can get around the discrepancies in his educational background. Plaintiff has failed to establish causation. With no causation, there's no prima facie case of retaliation. The museum's decision to rescind the job offer was a legitimate, non-retaliatory, and non-discriminatory reason. There can be no debate that saying honesty is needed for a job. Plaintiff can't even establish that HR or Montez had any retaliatory intent. Is there anything beyond your brief, anything more that you need to say? The only thing left is really that all we have here is speculation. And I think one thing that's really key here is, so we have two issues. We have that the offer was rescinded, and we also have that the contract was terminated. There's a 17-day gap between these two. So what plaintiff is asking the court to believe is that the offer was rescinded for retaliatory motives, but they still allowed him to work there for 17 more days. And they then terminated his contract for the same retaliatory motives 17 days later. That's just not reasonable. A jury would not infer that. And for those reasons, if Your Honors don't have any questions, we respectfully request that you affirm the district court's well-reasoned opinion. Thank you. What we just heard was a very concise summation emphasizing the employer's position in this case, but there are disputes everywhere. I just heard there's no dispute that a bachelor degree is a prerequisite. There is a dispute, because when plaintiff came in with the September 6th letter that said he had enough credits, she said, this is fine, you're cool, language to that effect. So they were willing to overlook it. So whatever they have as a paper credential, Young from HR accepted what LIU had to say about plaintiff's educational background. Exceptions to the general policy. Our brief, page 8 and 9, has five examples of people who had comparable discrepancies. Again, summary judgment, they're similarly situated. The question is, well, their errors were not willful, they were mistaken, and it wasn't intentional. How do you distinguish between a willful mistake and a negligent mistake or a good-faith mistake on a summary judgment motion, especially when plaintiff did everything he could to go back to the school, to find out what happened, he did what Young told him to do, and he came back with the letter that Young wanted him to have. So when we hear there's no way to get around the discrepancies, there is a way to get around the discrepancies. Young was willing to overlook the discrepancies. Page 267, quote, she said it was sufficient that you had the requirements, but not necessarily the degree. Answer, yes, that's exactly correct. We're talking about Young here. Quote, if she told me to provide the associates, I would have paid the bill and provided the associates. The only reason he didn't have the associates. Kennedy, is there any dispute that whatever Young said to Ahmed, that she told Montes that she would not approve the hire before the conversation that you're inferring took place between Tran and Montes? Is that a disputed fact as to whether Young changed her mind? Well, early on, when they first had the discrepancy, Young had not ruled out hiring plaintiffs. Right. But we were before talking about inferring that Tran influenced Montes in the interval between the conversation between Montes, the first and second conversation between Montes and Young. So what accounts for Young changing her mind, if that's what happened, between what she will assume, because in the light most favorable to Ahmed, that she told Ahmed, okay, that's cool, and what she said to Montes later on. Is that something that there's a dispute about, whether she actually told Montes in conversation one, listen, we don't want to go forward with this, when Montes was still standing up for Ahmed? Well, then Montes turned against Ahmed after his conversation with Tran. So the discrepancy about Young, I mean, I'm not sure how that matters. If she changed her mind, she changed her mind. Is there any indication that Tran had some interaction with Young before the conversation with Montes, where Montes turns around? No, we're not aware of any conversation that she had with Young, but there's something very irregular about this process, is my point. Again, de minimis standard. Once plaintiff subjects to the harassment, everything falls apart for him, and he does what they want, and he still doesn't get it. Other people had similar discrepancies. Montes has this doubt phase that nobody seems to be able to explain, although there is an inference to be drawn. And Young, apparently, on behalf of HR, the jury could assume that she is speaking on behalf of the museum about what they're willing to accept if there's a candidate that they want, and it's still not good enough. So what's going on here? And then we know that Montes, at the very end, when he's fired, plaintiff sends an e-mail, you know, what's going on? I did everything you want. I'm waiting for a decision. Montes is cc'd on the e-mail. He comes running out of his office two seconds after plaintiff hits send, yelling at the plaintiff. What's that about? And then they decide, well, the plaintiff is a hothead and he can't work here because he has access to computer technology, which he really doesn't, according to his testimony. So there's so many fact issues here about the irregularity of what happened that, to make out a prima facie case, there's enough here. Thank you very much. Thank you. We'll hear argument in the final case that's being argued today, Sanchez v. Bonacchi, 182963. Good morning, Your Honors. May it please the Court. Molly Casey from the law firm of McGuire Cardona. I represent the appellee, Hermann Sanchez. Your Honors, this is a case that went to trial about two years ago. My client, Mr. Sanchez, claimed that he was subject to an improper body cavity search in the context of a warrant being executed at his apartment. The defendant in the case, Aldo Bonacchi, a Oswego City police officer, maintained throughout the case that he did not conduct the manual body cavity search on my client. My client claimed that when he was doing the search. We have to assume that he did, right? We do, because that is the – that's what the jury found, yes. So that's not an issue on appeal. The only issue that the appellant has raised on appeal is whether my client's right to be free from that search, it was a clearly established right. Right. So here's my one question. Yes. How can you say that it was a clearly established right in February 2013 when this court held that it was not a clearly established right in August of 2013? Even then, we thought it was not a clearly established right. So how do you reconcile that? Well, I do want to address my argument on waiver, but it was a clearly established right because it was found by the jury to be an unreasonable body cavity search. No, no, no, no. So my colleague just asked you about a specific case written by our colleague, then Chief Judge Jacobs. Would you address that case? And the case name, Your Honor? Gonzalez. The Gonzalez case. Well, the Gonzalez case also said that a body cavity search must be done in a medically responsible way. This was done in my client's bedroom with the insertion of a finger into his rectum. It wasn't safe. It wasn't sanitary. So I think that that's the distinguishing point here, was that this was not a reasonable body cavity search because it was not conducted in a reasonable way. I think at this point, it's already gone to the jury and the jury has already decided that issue. And that brings me to my threshold argument, was that a qualified immunity defense was waived. This defense was waived if qualified immunity was asserted in the answer. It was asserted in the pretrial order and was raised in a motion at the end of the plaintiff's case, as I understand it. It was raised in the answer and then it was never raised again until we were in the courthouse for the trial. Well, so what? Well, because... So we have case law that says that it is, it would be logical, it would make life much easier for defendants and to some degree for the courts to make a motion for summary judgment. That's what's usually done when defendants are asserting qualified immunity. But we have case law saying that's not required, right? Well, there's also case law from the Supreme Court that says because qualified immunity is an immunity from suit rather than a defense to liability, it's effectively lost if a case goes to trial. Well, they're saying that in the context of saying that it is possible, permissible for the defendant to take an appeal immediately. But that doesn't mean it's all over now. It's an immunity both from going to trial and from having a judgment entered against you. And if they manage to screw it up so that maybe they should have been able to avoid a trial but they didn't, they still have a right to avoid a verdict or a judgment if they're entitled to qualified immunity, don't they? Well, I would argue that they're not entitled to qualified immunity because the jury already determined the factual issues that would have had to be determined in making the qualified immunity inquiry. Those issues have been the issue of whether or not it was clearly established as an issue that's properly before us, correct? Well, that is, yeah, that is the issue before us. That's not an issue that the jury could have decided, so. Well, the jury found that it was an unreasonable search, so to that extent, it was protected by the U.S. Constitution and it is a clearly established right. Well, when was it clearly established? When the jury returned their verdict? Well, the factual inquiry was undertaken by the jury. The judge, the trial judge charged that the jury was not going to be given any written interrogatories on that issue, but the jury was charged that the Fourth Amendment of the United States Constitution grants the right to be free from unreasonable searches. This was, I'm reading from the jury charge, A-188. And the judge told them that basically the New York court of appeals standard determines this, right? The judge told the jury it is an unreasonable search if there is not a reasonable an individualized reasonable suspicion that the individual was hiding something in his rectum. That was the instruction, right? And exigent circumstances. Right. So the jury decided that there was not individualized suspicion and there were not exigent circumstances. Correct. That is what the jury determined. Right. So that's what the jury found. But the question is, what makes it clearly established law that, you know, what makes the district court correct, not only that this is the constitutional standard, but that that was clearly established constitutional law at the time of the search? Well, if you read the trial transcript, it's clear that the search was done in a malicious way by the officer, and that's what the jury determined. Did the jury make a finding that it was malicious? Well, that's what the evidence was, Your Honor. The evidence was that the officer did not do what the client claimed that he did. The jury found in favor of my client. The jury believed my client's version of the events, which was that this police officer did this in a malicious way. It wasn't to try to find evidence. Isn't the only thing that the jury needed to find under the judge's instructions was that there was no individualized suspicion of something being hidden in the rectum and there was no exigent circumstance? Isn't that all the jury needed to find in order to return a verdict for the plaintiff? Correct, Your Honor. They did not have to find – there's nothing in the jury instructions that said they needed to find that this was done in a deliberately malicious way, is there? Correct, Judge. But the police officer testified at trial and at his deposition that doing the search in the way that my client claimed that he did was unreasonable, was against the law. The warrant could only be executed for a manual body cavity. But again, the officer's subjective understanding of the state of the law is not the issue. The issue for qualified immunity is what was the state of the law. And the district court didn't make such a finding and the jury obviously wasn't even asked to, right? Well, I think the point is, is that the qualified immunity inquiry goes to – the purpose of qualified immunity is to find law enforcement officers who just make a mistake. It's not to protect law enforcement officers who do something in a malicious way towards an RSD or an incarcerated person. So when the jury decided that the officer in this case did conduct the manual body cavity search, the testimony was that he knew that that was the wrong thing to do. So his knowledge is on point here because the qualified immunity inquiry protects people that just didn't know they were doing the wrong thing. It doesn't protect people who knew they were doing the wrong thing and went ahead and did it anyway. So I think that his knowledge at that point was relevant to the qualified immunity inquiry. Thank you very much. We have two other matters on today's argument calendar, both on submission. United States v. DeSantis, 18223. Thank you. And de Villa v. Gutierrez, 182927, as to which we'll reserve decision. And court is adjourned.